Mr. Pell? Good morning, Your Honors. My name is Daniel Pell. I represent the petitioner, Mr. Nakatura, and I would like to reserve three minutes. Very good. Your Honors, this case involves two questions. The first is whether there was an aggravated felony, and the second is whether there was a due process violation. At some point they dovetail, but initially the issue is whether or not, under the facts of this case, an aggravated felony was committed. That's probably the big question here. Let's just see if we can get the due process violation. The government has the right to bring up additional grounds for claiming that someone is removable, do they not? Yes. They brought it up on the day of hearing. The I.J. was irritated and not real happy with the government, but realized that they could bring this up. However, in order to give your client time, there was an additional 51 days of postponement. How is that a due process violation? Well, when you look at it in that way, it's not. But if you look at it... But that's the factual way it actually turned out, isn't it? No. Actually what happened was the action was commenced 16 months before. We had seven master calendar hearings. We went to trial. On the day of trial, when we were ready to proceed, the government said, whoops, there's another theory that we can advance. And you were given time, right? You were given that extra 51 days to deal with that. To respond, that's right. But what I'm saying is that the process of the Fifth Amendment and due process requires that at some point, the government be required to put up or shut up. And they didn't do it. And when can they continue to amend? Does the case continue? For example, at one point in the government's brief, at page 19, footnote three, they say, even assuming petitioner is correct that his offense constituted theft rather than bribery, it would still be an aggravated felony. So what they're telling you is that if you remand this case or you reverse this case and we have further proceedings, the government is free to bring now. Well, actually there is an argument that that effect. Yes. You said it's theft, pure and simple. But if we accept that, isn't, I think it's 1101A43G, a theft offense for which the term of imprisonment is at least one year. Exactly, Your Honor. So doesn't that fit? Well, this court has said that the contours of due process require a showing. I think it's the Bonnetra case that the contours of due process require a showing of prejudice. Now, up until the hearing, the merits hearing that was scheduled, if the IJ had gone forward on the day of this hearing, you would have a pretty good argument that there was some prejudice and surprise. But 51 days, I mean, nearly two months, seems to be a fair, I mean, pretty good compared to what you see in other cases. Well, did you object at the time of the second hearing that 51 days was still not enough? No, I didn't object at the second hearing. I objected at the first hearing and I raised it unless there's other questions that go on to the question of whether it's an aggravated crime. I understand that. So what's the right approach for us to take here? Well, the modified categorical approach, which this court has indicated when a statute, there's a statute of enumeration and there's a statute of conviction. And you've already ruled that the statute of enumeration in this case does not invite inquiry. So now we're looking at the both as to the mens rea and the actus reus. Now, let's pause on that. The reason that some of our precedent says where you've got a disjunctively phrased statute, you may have to make inquiry past the pure category is because part, when the statute hits that point of disjunction, one part of the mens rea would take you outside the realm of the aggravated felony and one would keep you inside the realm of the aggravated felony. Here, the only point of disjunction is between intent to defraud or intent to injure and is that a relevant distinction at all? Since both would still land you, would they not in the realm of bribery and therefore in the realm of the aggravated felony? So I'm having a, if you understand what I'm trying to ask, which is pretty rambling, does it make a difference here? The fact that there's a disjunction, is it at all legally relevant here? Yes, it's legally relevant because under the which is a fairly long statute, but under that particular statute, which is what Mr. Nakatora pled guilty to, if you accept a benefit for any person, which would be including Mr. Nakatora, that would be something that would fall outside commercial bribery because the benefit would be solely to him, would have no influence on the employer, on the master, on the principal and therefore would fall outside the definition and therefore it requires the court to look into the facts. This is about relating to bribery, right? Well, assume you're right. That's what the statute says. It says relating to bribery. Once you accept the fact that you have to look at the facts, then you see what occurred in this case, which was Mr. Nakatora concealed from KCMC what was going on and he stole from them by handwriting checks rather than going through the check writing procedure, which would have been required for approval. That is theft, pure and simple and not bribery and not related to bribery. Bribery is when you, according to one ALR, whatever the citation is, commercial bribery at common law under the procedures that this court has set out, where there is no definition, is when you accept something of value, an employee accepts something of value and does something to affect the employer. If I understand you right, then you're saying that it's a disjunction in the actus reus, not in the mens rea, that creates the problem here and should move us into a modified categorical approach. Is that right? Because as to the point I tried to ask you about earlier, which was specifically as to the two kinds of mens rea, you said it's still relevant and then you went to what appeared to me to be a discussion actus reus. I'm just trying to make sure I understand your argument. I think you're correct. All right. Let me see if I can take us maybe another direction. Commercial bribery is not defined in 110143, is that correct? That's right. And the legislative history doesn't really appear to do much. I've attached what I could find, your honor, and it's virtually, it's in volume one of Then we have to look at the common law, is that correct? Yes, your honor. And the one common law definition is, quote, the knowing solicitation or acceptance of a benefit in exchange for violating an oath of fidelity, such as that owed by an employee. Why isn't that our case here? I'm not familiar with that definition, your honor, or what you're reading from. It's from Black's Law Dictionary, page 2004. I'm unfamiliar with that. I've been dealing with, and I think the government has been dealing with the ALR rendition. But the ALR 3rd has, quote, bribing an employee with the intent to influence him in his relation to his employer. Yes. And I think that there has to be some, there has to be some influence or intention to influence. The kickback scene is not the I'll give you a kickback. No, what Mr. Nakatora did was accept money from Mr. White as a kickback as part of these renovation programs. And he completely avoided the checks and balances that KCMC as a federal program had in place. So what he did effectively was hide this from the employer and stole from the employer. There's no getting away from that in this case. And that's probably the reason why, even though a stay was denied in this case, we're here this morning. But knowing the acceptance of a benefit in exchange for violating an oath of fidelity, such as that owed by an employee. I don't think it applies in this case. I think the definition is too broad and probably applies to a public official. Okay. So it says employee. No, I understand that. It's talking about commercial bribery. Yes. That's the definition of commercial bribery in page 204 of Blacks. I, if Blacks has that definition and that's what it says, what can I, how can I respond to that? I don't think that's a correct definition. That's something that the court's going to have to decide. I would submit to you that the correct definition is. But remember here, it's an offense relating to, or related to commercial bribery. Yes. And if you look at the, if you decide that the modified categorical, if you decide the categorical approach is what you're going to follow, then I think the case is over. If you're going to, if you're going to follow the modified categorical approach, which I think you have to then you're going to get to the fact that what Mr. Nakatora did was to steal. And there is no way that theft relates to bribery. I mean, you can make relate as broad as the ocean theoretically, but there's no way that that stealing is the same as bribery. How about, how about if the theft is, assume we did look at the facts specific to this case. Your assertion is, if I steal, but I steal because somebody tells me, hey, we can set this up in a way where if you steal and give it to me, I can give money back to you. That that's not, that kickback is not akin to a bribery because I took the money in the first instance, gave it to somebody, and then they gave it back to me. It's the fact that I took it in the first instance that makes it that's legally the argument you've got, right? Yes. Yes. I think that is the argument. And I think that in this case, if you look at the indictment specifically the indictment relates to what Mr. Nakatora did in earlier in the, the, the, the one that we're talking about is count three and it incorporates the other counts of the indictment. And if you look at that, the indictment itself says that he concealed from KCMC what was going on. He hid what was going on. And there's, so there's no relation to the employer. There's no action that sought. In fact, the indictment is, is poignantly and, and seriously deficient in one way. The government never alleges that the contract was obtained because of a bribe. But, but, but isn't, but isn't, isn't the normal theft case. The bookkeeper keeps a second set of books and is taking from the till of the employers. No one else, there's no third party involved, correct? Isn't that, that's a simple case of theft from your employer. Sometimes, but sometimes theft by deception involves conspiracy and it does involve third, third persons. I mean, I think the difficulty here is, is that, is that the court understandably does not like what Mr. Nakator did, but, but it doesn't involve third persons in kickback schemes, does it? Can you give me one example where that's the case? That, that theft, that the third person is involved with you in a kickback scheme and that's called theft rather than something else? Well, in fact, this could have been in the same section. If you look at this section, your honor, this could have been charged as a theft. I mean, the title of this, of this section itself is theft or bribery of a program involving federal funds or whatever the exact name of it is. And in fact, there was another subsection that they could have charged, but instead they charged this. The logic of your position though, is if you've got theft, by definition, you can't have bribery with it because you started with theft. That's the end of the game. That's what I hear you saying. Um, no, it could be both. You could have a theft and you could have a bribery, but in this case you don't because in this case there's no relation to action on the part of the employer. If you define bribery as not involving in, um, an effect on the employer, then that's the precedent you're going to have to live with. Um, but my submission to the court is that the proper definition of bribery is that it is the action of an employee, corrupt action of an employee, which affects the employer. And in this case it didn't happen. So, and that's, that's essentially my argument. Is there anything else you'd like to tell us? No, Your Honor. Good. We'll have you back on rebuttal. Thank you. Good morning. Good morning. May it please the court. My name is Annette Wytacka and I represent the Attorney General. Thank you. The important thing to keep in mind is that the petitioner pleaded guilty to bribery. He pleaded guilty, he pleaded guilty to the charge under 18 U.S.C. section 666A1B. He was charged under the bribery statute, not under the theft statute, which, which is, is his statement is correct. So if we're in the categorical approach, that's the end of it. That is, that is the end of it. And, and, um. So why aren't we? Or why, why, why is he wrong and why aren't we? And why is Mr. Pell wrong? Well, the starting point, the, why Mr. Pell is wrong is that he wants you to look at the facts underlying the conviction. What he wants to do is he wants to re-argue the conviction and cast it in terms of theft and try to argue that what he was really, what he, what the crime that he really committed was theft. Right, we understand that's what he wants to do, but he's laid out a path for getting there and we want you to explain to us why the path he's described is the wrong one. He says there's a disjunction in the statute between the two, but as he, as we were discussing, the actus reus has a disjunction. You can either just be thieving or you can be bribing and here it's just thieving and you need to look at the underlying facts. Well, he's, he's focusing on, I think he's focusing on the entire statute, the entire statute, section 666. He was, which, which there is a, there is a disjunction. There is the theft portion of it and then there's the bribery portion of it. But because Mr. Nakatura was convicted under the bribery statute, then there, there is no, there is no disjunction. The starting point is, is the aggravated felony section 101-843-R, which deals with commercial bribery. And then the question is, does Mr. Nakatura's conviction fit within the aggravated felony statute? And his conviction was for section 18 U.S.C. 666-A1B. It specifically says that in the conviction document. So Mr. Pell's approach involves re-arguing what his conviction really should have been for when in fact he pleaded guilty to the bribery section. Where's the disjunction? Tell us that again. There, there's a, there's two, well there's two portions to the statute. One is section, section, subsection A1, A1A, which involves embezzling, stealing, obtaining by fraud or otherwise without authority, knowingly converting the use of property. And then the, the second section is A1B, and that's the one that he was specifically convicted under. And that deals with accepting anything intending to be influenced or rewarded in connection with transactions of your employer. And of course, all of this is in connection with an organization that receives federal funds. This organization was receiving funds under the Head Start program. And so it's not, it's not necessary or proper to go underneath the, the actual conviction and guilty plea for the federal bribery in order to sort of re-argue, well, it's not really bribery, it's really theft. He was specifically convicted under the bribery statute. So that's really as far as you need to go. Let's assume that we, we think he's got a good argument. What's your, what is, where do you go from there? Well, then applying the modified, the modified categorical approach, if you, if you are looking at the underlying facts, the underlying fact is he did, he did plead guilty to receiving money in connection with payments that he caused to be made to his co-defendant in the criminal action, Luther White. Payments that he caused to be made in connection with, with renovation work that the company was supposed to have been making. Why isn't that pure theft? Well, again, he pleaded guilty to having been influenced. And, and so, so even if, like, even if you're going beyond just the criminal statute, you're looking at the conviction documents and, and his, his, his conviction documents say that he, he accepted this money intending to be influenced. Well, let's look at the facts. What, what do the facts tell us? Well, the facts tell us, the facts tell us that he was writing checks. He was bypassing the normal sort of automated check writing system and writing checks by hand and, and in connection with paying out money for renovation work that was not being done and then was receiving, um, was receiving bribes in, in the, uh, the total almost $200,000, um, in exchange for bypassing. You say, you say bribes. He was receiving money back from Mr. White, um, uh, in exchange for bypassing the normal check writing. And why is that not just theft? That, well, it's, it's, it's, he agreed that he did it, um, that he was influenced by, that he was influenced by the, um, the money that he was receiving. So he agreed that he was doing it, um, that he was bypassing the normal check writing procedures, um, in order to receive the money back. So I get, I'm, you look like I'm not answering your question. The, the question, the, the, the, the point is that he pleaded guilty to bribery. He admitted that it was influence. I understand that. But if we're looking at the facts, I'm trying to figure out what the facts tell us. And the facts, actually, if you look, the, the immigration judge decided not to look at the pre-sentencing report in determining, um, whether, whether, um, the money laundering was an aggravated felony, but the pre-sentencing report is in the record and it does provide a very sort of rich, um, uh, rich, uh, discussion of exactly what was happening. But aren't you saying that in effect that a kickback is a bribe? Yes, yes, because he was doing, he was, he was, he was bypassing the, uh, the normal check writing procedures in order to receive the, in order to receive the money. Yeah, bypassing the normal check writing procedures, that could be just theft and theft alone. It's the fact that he has a cohort and that cohort promises to help him pocket money and that that promise of pocketing money influences him. If I've understood the argument, I think I understood, that's how you get the bribery. Right. And indeed, he does get money. He does. Kicked back to him. Yes, he got, um, he got, he received, um, over $200,000 and, um, and was, uh, ultimately, um, ordered to pay restitution in the amount of $885,000. So this isn't like he was just putting his hand in the pet cash fund taking copy money out. This was a huge scheme, um, and. The size of the theft doesn't make a difference, does it? No, not under this, not under 843-R. Under some of the aggravated felony statutes in the INA, it is necessary to look at how much theft is involved. But not here. Yeah. When we, uh, assuming we're in a modified, taking a modified approach, when we look at the facts, is it permissible to look what he pleaded to or do we, that is, you, you properly point out that he pled guilty to influencing and rewarding and so forth. Is it proper to look at that or do we look at the facts irrespective of what he pled to? It's, um, it's proper to look at the, um, the, I think the plea agreement is not in the record, but the conviction document is in the record. And yes, what the court should be looking at is what he pleaded to, um, because the, the relevant inquiry is whether an aggravated felony, whether he was convicted of an aggravated felony, not whether he committed an aggravated felony. Um, and so what the court is looking at is what, what he actually, uh, pleaded to because that formed the basis of his conviction. And then it's also proper to look at the indictment, um, and, uh, uh, the pre-sentencing report. You can decide if you want to look at that for extra flavor or, um, or not. But general, um, I'm not sure that this court has passed on whether the, whether the court can look at the pre-sentencing report, um, in determining if it is necessary to go into the modified categorical approach. Of course, our position is that it's not necessary, but just from the face of the, um, conviction statute, it's, um, it's easy to see. Even if you don't, if you don't, um, treat this as actual commercial bribery, um, it certainly comes within the broad scope of being related to commercial bribery. Um, if you have questions about the due process, I can, I can answer that. Um, then I'll just sum up. And I would like to point out that he was also ordered removed on the basis of having committed a crime involving moral turpitude, which he has not challenged at all. Um, and, um, so he's waived any challenge to the money laundering charge as a crime involving moral turpitude. And we ask that the petition be denied. Good. Ms. Witeka, thank you very much. Can I, can I ask you, are you in any relation by any chance to a, a, what's his name, a Ray Witeka? Oh, he must, must be a New York Giants fan. I'm not sure. We meant to look into it and then unfortunately he passed. I was not a New York Giants fan. I was a Cleveland Browns fan and I, the Ray Witeka was the center for the Giants in the fifties. Oh, right. Well, I grew up in Cleveland, so I'm, I'm right there with you. All right. All right. Good. Mr. Powell. Thank you, Your Honor. Um, um, kickbacks equate to bribery? I'm sorry? Do, do, do kickbacks equate to bribery? No, they can, but not under these facts, not under this case. Why not? Because there was no influence on the employer. And the definition of commercial bribery is that it must influence the employer or be intended to influence the employer. And it was not intended to influence the employer. The guy stole money from KCMC and he did it because he was the CFO and he did it because he could write, handwrite checks. And that's how he, how he stole the money. Two questions. First, Ms. Witeka says we never even get to that discussion because what he actually pled guilty to was the bribery portion of the statute. It's in the indictment. He said, I did it. That's the piece of the statute that's at issue. And it's the only piece that's at issue. And that's evident on the face of the charging document and the plea. What's your response to that? My response is to read carefully 18 U.S.C. Section 666A1B, which says- Because you say there's an actus reus disjunction in that. Yes. Corruptly solicits or demands for the benefit of any person, which would mean himself, doesn't have to have any relationship to the employer. It goes back to what Judge Ambrose was talking about, the definition of blacks versus the and the respondent has cited to the court in one ALR. If Judge Ambrose, not Judge Ambrose, but a blacks dictionary is correct and applicable in this case, end of story. But if you look at this statute that he was convicted under, no matter what you call it, the language of the statute defines the offense, not any label. Second question. The assertion made right at the end of your opposing counsel's argument is this is all irrelevant, really, because he's going anyway. He's got a crime of moral turpitude, and that's not even being appealed. Are we engaged in more than an academic exercise if he's leaving anyway? Absolutely. He's got adjustment of status. He has a 212H waiver under adjustment of status. He's married to a U.S.C. with two U.S.C. kids. And a waiver is available to him. If you look at the indictment, at appendix page 395, 396, 397, you will see, if you use the modified approach and if looking at the facts of this, you will see that on appendix page 397, subsection H of count one, which is incorporated into count three, to which he pled guilty, and I quote, between approximately September 1997 and March 2000, defendant White paid and caused to be paid monetary kickbacks to defendant Nakatora without the knowledge of KCMC of over $200,000 for providing the payments to defendant White's company, DNH Realty and Development, Inc., for supposed renovation work for KCMC, without the knowledge of KCMC. The checks were done without the knowledge of KCMC. Had Nakatora gone to his bosses and said, I'm going to write these checks out to defendant White, they would have said, no. That's why it's not a bribe. That's why this case does not involve commercial bribery, because you have to apply, however reluctant you may be, you have to apply your own precedent, which is the modified categorical approach, and when you get to the facts, it's not a bribery case, it's a theft case. However, unattractive that may be to the court. Thanks. Thank you. Thank you very much, Mr. Powell. The case was well argued. Thank you. We'll take the matter under advisory.